**KLAFTER & MASON, L.L.C.**
Manalapan Corporate Plaza
195 Route 9 South, Suite 204
Manalapan, NJ 07726
Ph: (732) 358-2028
Fx: (732) 358-2029
**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALLIANCE CAPITAL CORP.,** | :<br>:<br>: **Case No.** |
| **Plaintiff,** | :<br>:<br>: **Civil Action** |
| vs. | :<br>: |
| **THE WATLEY GROUP, L.L.C. and A. JOHN A. BRYAN, JR.,** | :<br>:<br>: |
| **Defendants.** | :<br>:<br>: |

   Alliance Capital Corp., a Delaware corporation, the above-captioned plaintiff ("Alliance"), with a New Jersey business address at 405 Glenn Road, Jackson, Ocean County, New Jersey, by and through its attorneys, Klafter & Mason, L.L.C., and by way of complaint against the above-referenced defendants, alleges and says as follows:

**NATURE OF THE ACTION**

   1. This is an action for, *inter alia*, damages arising out of defendants' breach of contract, unlawful interference and fraud related to Alliance's contractual entitlement to a certain percentage of a brokerage fee paid to defendant The Watley Group, L.L.C. ("Watley"), and defendant A. John A. Bryan, Jr.'s ("Bryan") fraud in misrepresenting to Alliance the total fee due and owing to Watley from the subject financing transaction that triggered the payment of

the fee, and attempting to cover up exactly how much Watley earned from the subject financing transaction in order to conceal the true amount of its total fee and, concomitantly, reduce the percentage paid to Alliance (Watley and Bryan are sometimes collectively referred to as "Defendants").

## JURISDICTION AND VENUE

2. Alliance is a Delaware corporation with a business address in New Jersey located at 405 Glenn Road, Jackson, Ocean County, New Jersey. Alliance is engaged in the business of complex financial transactions, loan originations and financial brokerage.

3. Upon information and belief, Watley is a California limited liability company that has transacted business with Alliance in and/or through New Jersey, including but not limited to negotiating commercial loan transactions with Alliance in and/or through New Jersey, and transmitting funds due to Alliance in and/or through New Jersey.

4. Bryan is the sole member and/or sole managing member of Watley.

5. Defendants have had an on-going business relationship with Alliance and its president Ronald J. Goldberg ("Goldberg"), for many years and, as part of that relationship, have had systematic and intentional contacts with the State of New Jersey.

6. Alliance brings this action pursuant to 28 *U.S.C.* §1332(a)(1).

7. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 *U.S.C.* §1332.

8. Venue of this matter is properly laid pursuant to 28 *U.S.C.* §1391.

## COUNT 1
**(Common Law Fraud)**

9. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 8 hereof as though fully set forth at length herein.

10. Upon information and belief, Defendants had a pre-existing relationship with Joel and Karyn Silver (the "Silvers").

11. Joel Silver is a well-known Hollywood producer, having produced internationally acclaimed movies such as *Lethal Weapon*, *Die Hard* and *The Matrix*.

12. Upon information and belief, the Silvers advised Defendants that they were in the market for various forms of financing related to, *inter alia*, their real property and one (1) of Joel Silver's production companies.

13. Defendants then reached out to Alliance to determine whether or not Alliance had relationships with any lender who had the appetite for the type of financing the Silvers sought.

14. Alliance and Defendants had worked together over the years on countless occasions, for their mutual benefit, on various commercial financing transactions.

15. Alliance advised Defendants that they did, in fact, have relationships with lenders who would be interested in the Silvers' financing needs.

16. Upon information and belief, Watley had entered into a written fee agreement with either the Silvers and/or The Silver Community Property Trust (the "Trust") pursuant to which the Silvers and/or the Trust agreed to pay Watley a designated fee in the event Watley was able to procure the requested financing.

17. Defendants agreed that Alliance would be entitled to twenty five percent

(25%) of the gross fee due and owing to Watley if Alliance was responsible for procuring the lender who produced the financing for the Silvers.

18. Despite Alliance's multiple requests, Defendants refused to produce a copy of the fee agreement so that Alliance could confirm the amount of Watley's fee and insure that Alliance received its twenty five percent (25%) of the same.

19. Ultimately, Alliance was successful in procuring the lender who ultimately produced the requested financing for the Silvers.

20. The Trust was identified as the borrower for the financing transaction.

21. In addition, Escrow of the West, a California-based escrow agency, was named escrow agent (the "Escrow Agent") for purposes of receiving the funds and making the appropriate disbursements therefrom, including but not limited to Watley's fee and Alliance's fee.

22. Defendants represented to Alliance that, based on the gross amount of the financing, Watley would be receiving a fee in the amount of $160,000 and, therefore, Alliance would be entitled to receive $40,000.

23. Alliance again requested a copy of Watley's fee agreement with the Silvers and/or the Trust to confirm the numbers represented by Defendants, but Defendants refused to produce the same.

24. Alliance, therefore, reasonably relied upon Defendants' representations regarding the gross amount of the fee they would receive as a result of procuring the necessary financing.

25. Defendants' representations to Alliance were false when made, in that

Watley was actually entitled to receive a gross fee in the amount of $489,500.

26. Defendants knew their representations to Alliance to be false at the time they were made, and made such representations for the sole purpose of depriving Alliance of its full fee based upon the total fee due and owing to Watley.

27. Defendants made said representations with the specific intention that Alliance rely upon the same.

28. Just prior to closing, the Escrow Agent circulated by email Escrow Instructions (the "Instructions") to all parties entitled to receive a fee disbursement from the loan proceeds.

29. The Instructions that Alliance received were clearly "scrubbed" in that the only disbursement appearing on the Instructions Alliance received was the $40,000 disbursement to Alliance and all of the other disbursements, including but not limited to Watley's disbursement, were redacted.

30. The Escrow Agent requested Alliance's signature on the Instructions.

31. Alliance requested a complete, un-redacted version of the Instructions; however, the Escrow Agent, pursuant to Defendants' direction, refused to produce the same.

32. When Alliance's counsel questioned the incomplete Instructions, Bryan became extremely defensive and hostile and suggested, among other things, that Alliance and its counsel were interfering with and damaging Defendants' relationship with the Silvers by demanding to see the entire Instructions.

33. Ultimately, when Alliance realized the Escrow Agent would not produce a copy of the complete Instructions, Alliance executed the Instructions in order to preserve its right

to the $40,000 disbursement.

34. The loan ultimately closed and Alliance received payment in the amount of $40,000.

35. Shortly thereafter, Alliance came into possession of the complete Instructions which set forth fees totaling $489,000, all of which were due and owing to Watley pursuant to its fee agreement with the Silvers and/or the Trust.

36. Watley had agreed to pay bits and pieces of its fee to other parties involved in securing the financing for the Silvers; however, the total contractual fee due and owing to Watley, and the basis for determining Alliance's twenty five percent (25%) share, was $489,000.

37. Defendants' efforts to conceal from Alliance the total amount of the fee were blatantly conspicuous from, among other things, Defendants' refusal to produce its fee agreement with the Silvers and/or the Trust and its blocking of Alliance's receipt of the complete Instructions.

38. As a direct and proximate result of Defendants' fraud, as described and complained of herein, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Defendants, jointly, severally and in the alternative, for:

    a.    consequential damages;

    b.    compensatory damages;

    c.    punitive damages.

    d.    costs of suit and attorneys fees; and,

    e. such other and further relief as the Court may deem just and proper.

## COUNT 2
### (Breach of Contract)

39. Alliance incorporates each and every allegation contained in paragraphs 1 - 38 as though fully set forth at length herein.

40. Watley's agreement to pay Alliance twenty five percent (25%) of the total fee due and owing to it constitutes a valid, binding and enforceable contract.

41. Watley breached said contract.

42. By reason of said breach, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Watley, for:

    a. consequential damages;

    b. incidental damages;

    c. costs of suit and attorneys fees; and,

    d. such other and further relief as the Court may deem just and proper.

## COUNT 3
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43. Alliance incorporates each and every allegation contained in paragraphs 1 - 42 as though fully set forth at length herein.

44. Inherent in the binding contract by and between Alliance and Watley was an implied covenant of good faith and fair dealing pursuant to the common law of the State of New Jersey.

45. Watley breached said implied covenant of good faith and fair dealing.

46. By reason of said breach, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Watley, for:

    a. consequential damages;

    b. compensatory damages;

    c. punitive damages.

    d. costs of suit and attorneys fees; and,

    e. such other and further relief as the Court may deem just and proper.

## COUNT 4
### (Tortious Interference With Contract)

47. Alliance incorporates each and every allegation contained in paragraphs 1 - 46 hereof as though fully set forth at length herein.

48. Bryan intentionally, maliciously, wantonly, wilfully and without justification interfered with Alliance's contract with Watley pursuant to which Watley agreed to pay Alliance twenty five percent (25%) of the total fee due and owing to Watley.

49. By reason of Bryan's interference, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Bryan, for:

    a. compensatory damages;

    b. consequential damages.

    c. punitive damages;

    d. costs of suit and attorneys fees; and

    e. such other and further relief as the Court may deem just and

proper.

## COUNT 5
### (Tortious Interference With Economic Advantage)

50. Alliance incorporates each and every allegation contained in paragraphs 1 - 49 hereof as though fully set forth at length herein.

51. Alliance had a reasonable expectation of economic advantage based upon its agreement with Watley and Watley's promise to pay Alliance twenty five percent (25%) of the gross fee due and owing to Watley.

52. Bryan unreasonably, intentionally, maliciously, wantonly and without justification or excuse interfered with Alliance's reasonable expectation of economic advantage.

53. Bryan's interference directly resulted in Alliance's loss of prospective economic gain.

54. As a result of Bryan's unlawful, malicious, intentional conduct, as described and complained of herein, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Bryan, for:

a. compensatory damages;

b. consequential damages.

c. punitive damages;

d. costs of suit and attorneys fees; and

e. such other and further relief as the Court may deem just and proper.

## COUNT 6
### (Unjust Enrichment)

55. Alliance incorporates each and every allegation contained in paragraphs 1 - 54 hereof as though fully set forth at length herein.

56. As a direct result of Defendants' wrongful acts, as described and complained of herein, Defendants have been unjustly enriched to the detriment of Alliance.

57. By reason of the foregoing, Alliance has been damaged.

**WHEREFORE**, Alliance hereby demands judgment against Defendants, jointly, severally and in the alternative, for:

    a.   consequential damages;

    b.   compensatory damages;

    c.   punitive damages;

    d.   costs of suit and attorneys fees;

    e.   such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Alliance hereby demands a trial by jury on all triable issues of fact raised herein.

**KLAFTER & MASON, L.L.C.**
**Attorneys for Alliance**


BY:   /s/   Gary L. Mason
           Gary L. Mason

Dated: August 4, 2014